Angelos **MPAMPOUROS**, Libelant,

v.

**STEAMSHIP AUROMAR**
and
**Eastern Star Maritima, S.A.**, a body corporate,
and
**Eastern Steamship Agency, Inc.**, a body corporate, Respondents.

No. 4292.

United States District Court
D. Maryland.

April 6, 1962.

Sol C. Berenholtz and Harry Anderson, Baltimore, Md., for libelant.

Southgate L. Morison and Ober, Williams, Grimes & Stinson, Baltimore, Md., for respondents.

WINTER, District Judge.

This case tests the quantum of American contact necessary to sustain jurisdiction under the Jones Act, 46 U.S.C.A. § 688. Should the Court hold the Jones Act inapplicable here, the subsidiary question is presented whether the Court should decline jurisdiction of the causes of action not asserted under the Jones Act.

By his amended libel, libelant asserts three causes of action: First, a libel in

rem based upon a claim for damages under either American general maritime law or Liberian general maritime law (the law of the flag which the vessel was flying, alleged to be the same as American general maritime law) occasioned when libelant was pulling on a rope while he was at the top of one of the mast houses aboard the vessel, the rope broke and he fell from the top of the mast house to the deck below; second, a libel in rem for maintenance and cure under American general maritime law, or under Liberian general maritime law (again alleged to be the same as American law) for injuries, irrespective of negligence, and, thirdly, a libel in personam founded on a cause of action based upon the Jones Act, 46 U.S.C.A. § 688, arising out of the facts and matters set forth above.

In the first count of the amended libel, libelant alleges that the SS AUROMAR was a merchant vessel sailing under the Liberian flag, and that the respondent Eastern Star Maritima, S. A. (hereinafter called "respondent Eastern"), is a Panamanian corporation, having no office or principal place of business in the City of Baltimore, or the State of Maryland. While libelant alleges that Eastern Steamship Agency, Inc. is a body corporate of the State of New York, he further alleges that it has no office in the City of Baltimore, or the State of Maryland. Service has not been obtained on this respondent, and it is not now before the Court.[1]

Libelant is a citizen of the Kingdom of Greece. Libelant's injuries were sustained on the high seas when the vessel was approximately two days out of Venezuela. From Venezuela the vessel proceeded to Amsterdam, Holland, where libelant received treatment. In regard to the count under the Jones Act, libelant alleges:

"20. That the SS AUROMAR and the Respondents possess substantial U. S. contacts. Eastern Star Maritima S.A. is a body corporate of Panama, and the respondent Eastern Steamship Agency, Inc., is a body corporate of the State of New York. The directors of Eastern Star Maritima S.A. are all American citizens, resident in New York, and two of the five stockholders of Eastern Star Maritima S.A. are American citizens resident in the State of New York. All of the stockholders and directors of Eastern Steamship Agency, Inc. are American citizens."

█ Respondent Eastern contends that the Jones Act is inapplicable (Count 1) and that the Court should decline jurisdiction of Counts 2 and 3 on the grounds: (1) that libelant is an alien and is a citizen and resident of Greece, who is believed to be physically present in Greece at the present time, (2) that the vessel is of Liberian registry, owned by a Panamanian corporation, having its principal offices in Panama, Panama Republic, and having no office in the District of Maryland, (3) that libelant entered into an agreement of employment in Greece with a Greek agent for respondent Eastern, (4) that libelant went to Genoa, Italy, where he signed Liberian articles as an able-bodied seaman on the AUROMAR, (5) that the injuries complained of were sustained on the high seas, and all witnesses and all persons having knowledge of the medical treatment rendered libelant are either on board the vessel or on board other foreign flag vessels or in Greece, (6) that, in particular, the medical testimony would

---

1. Since jurisdiction has not been obtained over Eastern Steamship Agency, Inc. little attention need be paid to the allegations concerning it. Libelant alleges it is the owner of the SS AUROMAR, although respondent Eastern claimed the vessel with a sworn statement that respondent Eastern was the "sole" owner thereof. Libelant also alleges Eastern Steamship Agency, Inc., together with respondent Eastern, "operated and had in their possession and control the SS AUROMAR." In any event, where the issue arises on an allegation of American control of the ultimate owner as a sufficient contact to sustain United States jurisdiction, these allegations add nothing additional to the case. See footnote 3, infra.

have to be obtained from doctors in Holland and Greece, although libelant was seen by a doctor in Philadelphia and also examined by a doctor in Baltimore, and (7) that in Greece libelant made a settlement of his claim and executed a release with regard to which, if there be any objection as to validity, the law of Greece would apply, and the testimony of certain Greek judicial or semi-judicial persons would be applicable.

At the hearing respondent Eastern concedes that its two American stockholders own not less than 51% nor more than 54% of the voting stock. While respondent Eastern does not concede that all of its directors are American citizens, it offers no proof to controvert libelant's allegation in this regard.

For purposes of the motion, the Court must accept the allegations, except where clear and convincing proof is offered to the contrary. Thus, from the foregoing, the basic question for determination is whether majority stock ownership by citizens and residents of the United States and American citizenship of all of the directors of a corporation are sufficient to sustain jurisdiction in this Court under the Jones Act, where the libelant is an alien, where the ship flies a flag of foreign registry, where the injuries complained of occurred on the high seas, and where the greater part of the witnesses, and particularly essential medical witnesses, reside outside of the United States and are beyond the process of the Court.

The starting point in the inquiry is Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). That case involved a determination as to whether the Jones Act was applicable where a Danish seaman, while temporarily in New York, joined the crew of a ship of Danish flag and registry, owned by a Danish citizen, and signed ship's articles providing that the rights of crew members would be governed by Danish law and by the employer's contract with the Danish Seamen's Union. In that case the jury found that the foreign seaman was negligently injured aboard the ship,

in the course of his employment, while in Havana, Cuba. The Court held the Jones Act to be inapplicable.

In reaching the result, the Court spelled out the basic test to be applied in such cases, namely, a process of weighing American contacts against foreign contacts. Specifically, the Court said (p. 582, 73 S.Ct. p. 928):

"The criteria, in general, appear to be arrived at from weighing of the significance of one or more connecting factors between the shipping transaction regulated and the national interests served by the assertion of authority. It would not be candid to claim that our courts have arrived at satisfactory standards or apply those that they profess with perfect consistency. But in dealing with international commerce we cannot be unmindful of the necessity for mutual forbearance if retaliations are to be avoided; nor should we forget that any contact which we hold sufficient to warrant application of our law to a foreign transaction will logically be as strong a warrant for a foreign country to apply its law to an American transaction."

Following this statement of general principles, the Court considered (p. 583, 73 S.Ct. p. 928) " * * * the several factors which, alone or in combination, are generally conceded to influence choice of law to govern a tort claim, particularly a maritime tort claim, and the weight and significance accorded them." Listed and discussed are: (1) place of the wrongful act; (2) law of the flag; (3) allegiance or domicile of the injured party; (4) allegiance of the defendant shipowner; (5) place of contract; (6) inaccessibility of foreign forum; and (7) the law of the forum. The Court made clear that certain of these factors are entitled to greater weight than others.

The factor most significant in the case at bar is the allegiance of the defendant ship-owner, because none of the other tests establish American contact, except the law of the forum, a contact deemed to be insufficient to sustain jurisdiction

in Lauritzen. Allegiance of the ship-owner was not determinative in the Lauritzen case, because it was unquestionably to the Kingdom of Denmark. However, in discussing that factor, the Court in footnote 24, referred to Gerradin v. United Fruit Co., 60 F.2d 927 (2 Cir.1932), cert. den. 287 U.S. 642, 53 S.Ct. 92, 77 L.Ed. 556 (1932), as a case which had applied the Jones Act, where the American contact was American allegiance of the ship-owner. A careful reading of the Gerradin case, however, discloses three other American contacts, viz., the domicile of the injured seaman, the place of contract, and the domicile of the charterer and operator of the vessel.[2] Additionally, the voyage was from New York City to Honduras, and return. After making this reference, the Supreme Court found the factor inapplicable, because, as the Court said (345 U.S. pp. 587–588, 73 S.Ct. pp. 930–931):

> " * * * the *utmost liberality* in disregard of formality does not support the application of American law in this case, for it appears beyond doubt that this owner is a Dane by nationality and domicile." (italics supplied).

In this circuit, Southern Cross Steamship Co. v. Firipis, 285 F.2d 651 (4 Cir. 1960), cert. den. 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859 (1961) is the closest case to deciding the issue presented here. In the Southern Cross case, an able-bodied seaman had signed an employment contract in Greece and had joined the vessel in Egypt. The articles were Honduran and provided that in case of accident Honduran law should be applied. While the vessel, which flew the flag of the Republic of Honduras, was in drydock in Norfolk, the plaintiff sustained an injury as a result of slipping on a negligent accumulation of oil. He sued under the Jones Act, and the District Court sustained the application of that statute. The Court of Appeals affirmed,

because the record provided a proper basis for determining that (285 F.2d p. 655), " * * * the effective control of the vessel was by American interests," and added (285 F.2d p. 655): "This, coupled with the fact that the injury occurred while the ship was in drydock in an American port and with the ship's Hondurian registration being illusory, is sufficient under the doctrine of Lauritzen v. Larsen, supra, for the application of the Jones Act."

Thus, ultimate American ownership and control was an important factor, but, on the facts, the case also brought into play the additional factor of place of the wrongful act.

The only other circuit in which the precise question seems to have been raised is the Second Circuit, in Gerradin v. United Fruit Co., supra (referred to in Lauritzen but not quite in point with the case at bar), Carroll v. United States, supra, footnote 2, (which, although decided prior to Lauritzen, did not receive the oblique blessing given to Gerradin), and Bartholomew v. Universe Tankships, Inc., 263 F.2d 437 (2 Cir.1959), cert. den. 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed. 2d 1030 (1959). This latter post-Lauritzen decision sustained the application of the Jones Act to a suit by a seaman for assault by a fellow-member of the crew.

In the Bartholomew case, the American contacts were: the assault occurred within the territorial waters of the United States, the libelant signed on the vessel in Baltimore, the libelant had established a residence in Brooklyn, New York and had filed a declaration of intention to become an American citizen, and, although the vessel flew the Liberian flag and was owned by a Liberian corporation, all of the stock of the Liberian corporation was held by a Panamanian corporation and all of the stock of the Panamanian corporation was owned by citizens of the United States. In addition, the Liberian corporation's officers

---

2. A later Second Circuit case, Carroll v. United States, 133 F.2d 690 (2 Cir. 1943), is more nearly in point, because there it was clear that the principal contact was American ownership, although the injured seaman was treated in New York and resided there subsequent to his medical discharge.

were all American citizens, and its principal, as distinguished from its statutory, office was maintained in New York City. The voyage on which the alleged assault occurred began in Baltimore and ended in Philadelphia.

It is true that in the Bartholomew case the Court placed much stress upon the ultimate American ownership of the vessel, and was fearful that should the Jones Act be held inapplicable, there was danger that (p. 442): " * * * the purposes of the Jones Act are to be frustrated by American shipowners intent upon evading their obligations under the law by the simple expedient of incorporating in a foreign country and registering their vessels under a foreign flag." The Court, nevertheless, recognized other American contacts and reached the conclusion (pp. 442–443): "That the factors or contacts just discussed are in the aggregate substantial is clear beyond peradventure of doubt." (plural emphasis supplied).

The Bartholomew case (footnote 4, p. 443) sheds doubt on the continued validity of those cases decided before Bartholomew, in the clear split in the Southern District of New York, which held that American ownership alone is insufficient to warrant application of the Jones Act. Such had been the holdings in Mproumeriotis v. Seacrest Shipping Co., 149 F.Supp. 265 (D.C.S.D.N.Y.1957) and Argyros v. Polar Compania De Navegacion, Ltda., 146 F.Supp. 624 (D.C. S.D.N.Y.1956). Contrary holdings, however, were reached in Voyiatzsis v. National Shipping & Trading Corporation, 199 F.Supp. 920 (D.C.S.D.N.Y.1961); Rodriguez v. Solar Shipping, Ltd., 169 F.Supp. 79 (D.C.S.D.N.Y.1958); Forde v. Urania Transportation, Inc., 168 F. Supp. 240 (D.C.S.D.N.Y.1958); Bobolakis v. Compania Panamena · Maritima San Gerassimo, 168 F.Supp. 236 (D.C. S.D.N.Y.1958); and Zielinski v. Empresa Hondurena de Vapores, 113 F. Supp. 93 (D.C.S.D.N.Y.1953), but in at least three of these there was one additional American contact.[3]

Notwithstanding this footnote expression in the Bartholomew case, the question is not at rest in the Southern District of New York, as evidenced by Moutzouris v. National Shipping & Trading Co., 194 F.Supp. 468 (D.C.S.D.N.Y. 1961), which held the Jones Act inapplicable where a Greek seaman, engaged in Greece to serve as a fireman on board a vessel flying the Liberian flag, was injured on the high seas, in spite of the allegation that the beneficial owners of the stock of the corporations owning the vessel were American citizens.

In this state of the law, the Court deems it is without binding precedent and the Court, within the framework of the rules laid down by the Supreme Court and the United States Court of Appeals for the Fourth Circuit, must undertake, in the first instance, the weighing process required by the Lauritzen case. This Court concludes that on balance there is not here substantial American contact sufficient to render the Jones Act applicable.

At the outset, the Lauritzen case, after citing Gerradin v. United Fruit Co., supra, where there was American domicile of the injured seaman, American connection as the place of execution of the contract of employment, as well as Amer-

3. Throughout the decisions of the United States District Court for the Southern District of New York purported distinctions are made between cases where there is solely an allegation of majority American stock ownership and those where such an allegation is coupled with an allegation of American control. To this Court that is a distinction without a difference.

American corporations are organized in accordance with democratic concepts. Majority ownership, with rare exception, carries with it actual control. Hence an allegation of majority American ownership means actual American control and the statement of the latter is solely a conclusion of the pleader. It is only in those rare instances that majority ownership does not carry actual control that a separate allegation of the nationality of control becomes an allegation of fact.

ican allegiance of the charterer and operator of the vessel, and employing the phrase the "utmost liberality in disregard of formality," appears to hold that the combination of contacts in Gerradin are the outer limits of permissibility in applying the Jones Act. It follows that where those limits are exceeded, as in the case at bar, the Jones Act is not applicable.

That the case at bar is distinguishable from the Southern Cross Steamship Co. case, supra, is also readily apparent because, as before stated, the accident occurred in Norfolk and the seaman received his medical treatment in that place, as well as there being a sufficient basis on which to find American allegiance of the ship-owner. It is true, as pointed out in the Lauritzen case, that the place of the wrongful act in maritime torts does not have the same broad application as to torts committed under municipal law, because the international aspect of maritime torts renders blind adherence to this principle improper. Nevertheless, it is one of the accepted tests, and from the practical aspect an important one, in a case having facts similar to the Southern Cross Steamship Co. case, because the treating doctors, whose testimony is so important to the question of damages present in any tort claim were amenable to process and could be present and testify in person before the trial court. These considerations are absent here.

Unquestionably, the Jones Act is remedial legislation for the benefit of seamen, and primary emphasis should be placed on this aspect, rather than its penal effect on ship-owners, as suggested by the Bartholomew case, supra. Viewed from the standpoint of the libelant, the conclusion seems inescapable that a finding of American allegiance by the ship-owners, arrived at by piercing the veil of corporate ownership, is nothing more than a fortuitous circumstance. Where a seaman is a citizen and resident of Greece, where he entered into articles in Greece for a voyage initially from Greece to Venezuela, and from Venezuela to Holland, and where the injured seaman received medical treatment in Holland, and, upon medical discharge, returned to Greece, it is difficult to say that the United States has a legitimate interest in governing the rights and obligations of the seaman and the ship.

Finally, the Court must observe the injunction in the Lauritzen case that, as part of the weighing process, due regard be made to the possibility of retaliation and the fact that comity would require that the foreign counterpart of an extreme exertion of jurisdiction here be honored, thus bringing about a multiplicity of forums and an increased danger of divergent results. In the case at bar, there would seem to be clear warrant for Liberian and Grecian jurisdiction and, although the Liberian law is alleged to be the same as American law, many cases can be predicted where, if jurisdiction is sustained here on the basis of this slight American contact, jurisdiction will also lie in many foreign nations having rules quite different from those prevailing in domestic courts. Thus, if not an invitation for retaliation, there is great probability of a multiplicity of forums with attendant odious consequences. Weighing, if it is the concept to be applied, means balancing divergent and opposing factors. Even the remedial aspects of the Jones Act cannot support tilting the balance in support of jurisdiction founded on this American contact.

For all of these reasons, the Court concludes that the Jones Act is not applicable.

Having decided that the Jones Act has no application, the Court must next decide whether the Court should retain its discretionary jurisdiction of the first two counts of the amended complaint. In cases where the Jones Act is held applicable and jurisdiction as to it is mandatory, courts generally retain discretionary jurisdiction to decide other causes of action arising out of the same facts but asserted under general maritime law, Voyiatzis v. National Shipping & Trading Corp., supra; Forde v. Urania Transportation, Inc., supra; and Bobolakis v.

Compania Panamena Maritima San Gerassimo, supra.

It may not necessarily follow that because there was insufficient American contact to render the Jones Act applicable that there is of necessity insufficient American contact to retain discretionary jurisdiction, but the factors indicating the former tend strongly to decide the latter, absent a showing that this is the only forum in which libelant's rights can be fully protected. Giatilis v. The Darnie, 171 F.Supp. 751 (D.C.Md.1959) is a case where this Court declined discretionary jurisdiction. On its facts it is somewhat different from the case at bar in that the ultimate owners of the vessel were Greek nationals, whereas here it is conceded that the owners of the majority stock of the corporation owning the vessel are American citizens. On the other hand, the case at bar is a stronger one for declination of jurisdiction, because in The Darnie case there was mandatory jurisdiction as to a wage claim asserted along with the claim for injury. Hence, it could be argued that the parties should be held before the Court for all purposes as long as they were required to be there for one purpose, while here it has been decided that the Jones Act is inapplicable, so that the only counts of the amended complaint still before the Court are those where jurisdiction is discretionary. To the same effect is Moutzouris v. National Shipping & Trading Co., 196 F.Supp. 482 (D.C.S.D.N.Y.1961); cf. Katelouzos v. The S. S. Othem, 176 F.Supp. 954 (D.C. E.D.Va.1959).

Since the libelant is a Greek national, presently believed to be in Greece, or at least not physically in the United States, since the injuries occurred on the high seas, since all of the witnesses—with the exception of two examining doctors—are outside of the United States, since the articles were executed in Greece, and since the release was prepared in Greece and by its terms states that its validity is to be determined by Greek law, there is little showing that jurisdiction must be retained for the protection of libelant. Indeed, retention of jurisdiction will pre-sent practical obstacles to an expeditious decision of his claim. To insure that libelant's rights are fully protected, the Court in declining jurisdiction of the first two counts of the amended libel, will do so upon condition that if the libelant files suit in Greece, or in Liberia, against the SS AUROMAR or Eastern Star Maritima, S.A., the owner of the ship, or the underwriter will guarantee the payment and satisfaction of any judgment or decree up to the amounts claimed in the first two counts of the amended libel and, further, that service of process will be accepted. Prior to the entry of an order of dismissal, a stipulation to this effect must be filed in the proceedings.

Counsel may prepare an appropriate order.