Angelos **MPAMPOUROS**, Karistos, Greece, Libelant,

v.

**STEAMSHIP AUROMAR**

and

**Eastern Star Maritima, S.A.**, a body corporate,

and

**Eastern Steamship Agency, Inc.**, a body corporate, Respondents.

No. 4292.

United States District Court
D. Maryland.

May 25, 1962.

Sol C. Berenholtz and Harry Anderson, Baltimore, Md., for libelant.

Southgate L. Morison, Ober, Williams, Grimes & Stinson, Baltimore, Md., for respondents.

WINTER, District Judge.

On April 6, 1962, an opinion was filed, D.C., 203 F.Supp. 944, deciding that the Jones Act was inapplicable because of the absence of substantial American contacts and, further, that the Court should decline to exercise its discretionary maritime jurisdiction. Entry of a final order was postponed pending the filing of an undertaking by the ship and her owner, Eastern Star Maritima, S. A., to respond to any subsequent proceeding that might be filed in Greece or in Liberia.

Before the final order was entered, libelant filed a motion for leave to file a

second amended libel. The motion is grounded upon two basic allegations— that there are additional American contacts, not before the Court in the original proceeding, which, together with those previously alleged, are substantial, and that the proctor for the libelant in his trial memorandum and in oral argument at the time of the previous proceeding requested the Court to permit him to demonstrate additional American contacts, in the event that the Court determined that the allegations in his amended libel were not substantial.

■ The latter ground for the motion has little merit when the facts are further stated. Respondents' motion to decline jurisdiction followed libelant's original pleading. After the motion was filed, libelant filed an amended libel, invoking for the first time the provisions of the Jones Act, in an effort to sustain American jurisdiction and, by stipulation of the parties, the motion was treated as applicable to the amended libel. Having elected to file an amended libel to cure possible jurisdictional defects, libelant had a full opportunity to include whatever jurisdictional allegations he thought necessary.

■ As to the other ground of the motion, namely, that there are facts and matters tending to support American jurisdiction which had not been considered by the Court, other considerations come into play. Admiralty Rule 23, 28 U.S.C.A. permits amendments in matters of substance to be made on motion at any time before the final decree, on such terms as the Court shall impose, and it seems clear that the discretion thus lodged in the Court should be liberally exercised, Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953); 2 Benedict, Admiralty, (6th Ed., 1940), § 355. In deciding whether to exercise its discretionary power to permit further amendment, the Court should consider what new American contacts are sought to be introduced into the proceeding. If the new allegations, taken as proven, might indicate a different result, amendment should be permitted, especially where as here, a refusal to permit amendment results in the denial of *any* forum in the United States.

In his proposed second amended libel, libelant seeks to amend ¶20 of the amended libel, set forth in the Court's previous opinion, and to substitute therefor the following:

"20. That, on information and belief, the SS AUROMAR, and the corporate respondents, and the libelant's cause of action possess the following substantial United States contacts:

"(a) That from 51 to 54 per cent of the stock of Eastern Star Maritima, S.A., a body corporate of Panama, is owned by United States citizens and residents.

"(b) That Eastern Star Maritima, S.A. is the owner of the SS AUROMAR.

"(c) That all of the corporate directors of Eastern Star Maritima, S.A. are United States citizens and residents.

"(d) That the operation and control of the AUROMAR is entirely in the hands of American citizens and residents.

"(e) That Eastern Steamship Agency, Inc., a body corporate of the State of New York, is either the operating agent of the SS AUROMAR for Eastern Star Maritima, S.A., or is the owner pro hac vice of the vessel.

"(f) That all of the stockholders and directors of Eastern Steamship Agency, Inc. are United States citizens and residents.

"(g) That the SS AUROMAR was built in the United States in approximately 1944.

"(h) That for approximately fifteen years after 1944 the SS AUROMAR sailed continuously under the United States flag.

"(i) That in 1959 the SS AUROMAR was transferred to the flag of Liberia, as a flag of convenience,

but, on information and belief, the United States Government, by virtue of certain agreements entered into in connection with the change of flag, and of the provisions of United States law, possesses certain rights to purchase or charter said vessel.

"(j) That the SS AUROMAR has never been in Liberia, and the registration of said vessel under the Liberian flag is purely one of convenience.

"(k) That no individual or corporation of Liberia has any interest whatsoever in the SS AUROMAR.

"(l) That the SS AUROMAR is not now and has never been regularly engaged in the carriage of cargo to and from Greek ports.

"(m) That the only contact between the SS AUROMAR and Greece is that one or more minority stockholders are Greek citizens, and that many of the crew of the vessel are Greek citizens who are sometimes employed in Greece and then sent to join the vessel in other ports of the world.

"(n) That SS AUROMAR is principally engaged in the carriage of cargo to and from United States ports.

"(o) That the SS AUROMAR is essentially owned, operated, controlled, and financed by United States citizens and residents.

"(p) That the SS AUROMAR is operated in direct competition with comparable vessels flying the United States flag.

" (q) That at the time the original Libel in this case was filed, the Libelant was again a member of the crew of the SS AUROMAR, and the said vessel was in the port of Baltimore, Maryland.

"(r) That after receiving certain medical attention in Holland and in Greece, the Libelant rejoined the SS AUROMAR in Rotterdam, Holland, in April, 1961, and from April, 1961 until the filing of the original Libel in this case, sailed continuously out of United States ports with said vessel.

"(s) That the SS AUROMAR sailed from Rotterdam to Philadelphia in April, 1961, and the Libelant was examined by a doctor in Philadelphia for his injured foot.

"(t) That the SS AUROMAR arrived in Baltimore in September, 1961, with the Libelant aboard, and in Baltimore the Libelant was examed by a doctor on behalf of the vessel and the Respondents, and his permanent disability was evaluated by said doctor.

"(u) That in September, 1961, while the said vessel was in Baltimore, the Libelant was also examined by a doctor selected by his Proctors, and his permanent disability was evaluated by said doctor.

"(v) That the Libelant at the time of the trial of this case, may offer additional testimony indicating further substantial United States contacts."

The efficacy of many of these allegations is foreclosed by the discussion in the previous opinion; others, although not previously discussed, are clearly irrelevant to a different result from that expressed in the previous opinion. The only new element, appearing to the Court at this time to be of possible significance, which libelant seeks to introduce is found in paragraph (e), wherein it is alleged that Eastern Steamship Agency, Inc. may be "the owner pro hac vice of the vessel."

■ After reconsideration of the authorities cited in the previous opinion, the Court concludes that libelant should at least be given the opportunity to amend so as to make this allegation and the further opportunity to prove it and argue its significance in an adversary proceeding. To protect libelant's right to make a full record and to afford libel-

ant a last opportunity to expose all of his claims of jurisdiction, libelant will be permitted to amend paragraph 20 of his libel as set forth above, and an order to that effect has been entered.