Stamatios **MALANOS**, Libelant,

v.

**MARSUERTE COMPANIA NAVIERA, S.A.**, a foreign corporation or association, as owner and/or operator of the Greek S.S. KYMA, Respondent.

No. 855.

United States District Court
E. D. Virginia,
Newport News Division.

Oct. 24, 1966.

Burt M. Morewitz, Newport News, Va., for libelant.

Jett, Sykes & Berkley, W. L. Berkley, III, Norfolk, Va., for respondent.

### MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

This matter is before the Court on respondent's exceptions to the jurisdiction and a plea of forum non conveniens. More appropriately it may be treated as a motion to decline jurisdiction.

Libelant, a Greek national, was a member of the crew of the KYMA, a vessel flying the flag of the Kingdom of Greece and registered as such in Greece. The ship was owned by Marsuerte Compania Naviera, S.A., a corporation organized and existing under the laws of the Republic of Panama, but said vessel was admittedly operated and controlled by the owner corporation from its principal office in New York. We assume, for the purpose of this memorandum, that the stock ownership was vested in interests of United States citizens. *In personam* process was accepted by the respondent corporation.

Since the date of the last occurrence which gives rise to this cause of action, the KYMA has come to rest on the bottom of the Atlantic Ocean. This occurred on or about May 9, 1965. This action was filed on June 3, 1966.

Libelant alleges that, during his employment as a member of the crew of said vessel, he was caused to become ill of a stomach ulcer by reason of the alleged unseaworthiness of the vessel and the negligence of the respondent. He signed a contract of employment with respondent's agent in Greece on or about July 21, 1964; said contract being dated July 17, 1964, and specifying that libelant's wages and other terms of employment would be governed by the Greek Collective Agreement which, by its terms and those of the contract, bars the libelant from maintaining any claim in any court of the United States. Libelant joined the vessel at Antwerp, Belgium, as a fireman. On or about November 16, 1964, libelant was hospitalized at Osaka, Japan, where he remained until January 22, 1965 when he was released as "fit for travel" with a recommendation that he be "rechecked by a doctor at his homeland". He was repatriated to Greece by air. It is alleged that respondent has failed and refused to furnish any further maintenance and cure.

During the time of libelant's service aboard the vessel, it never visited any port in Virginia. It is not contended that libelant was ever within the Eastern District of Virginia.

In the final analysis the sole point for consideration is whether jurisdiction should be exercised where the only contact with the United States is that citizens of the United States own and control the stock interest in a Panamanian corporation which, in turn, owns and operates a vessel registered in Greece and flying the flag of the Kingdom of Greece. We may also assume that the vessel visits ports in the United States at irregular intervals.[1]

---

1. It would be an unusual case if, indeed, all vessels did not call at a United States port from time to time.

This issue was thoroughly considered by District Judge Winter (now Circuit Judge) in Mpampouros v. Steamship Auromar, D.C.Md., 1962, 203 F.Supp. 944. It was there held that the sole contact of majority stock ownership was insufficient to persuade the court to apply the Jones Act or exercise jurisdiction under general maritime law.[2]

Little could be added to the able discussion of this matter by Judge Winter. Each case must be decided upon the particular facts presented. If the Jones Act is inapplicable, as Judge Winter stated in 203 F.Supp. 944, it follows that there is no valid reason why the federal court sitting in the Eastern District of Virginia should exercise jurisdiction in the present controversy. The only remaining contact with Virginia is the presence of libelant's attorney. This illness became acute in Japan, where libelant was initially hospitalized; libelant apparently resides in Greece and, so far as we know, has never been to Virginia; libelant signed an employment contract in Greece, agreeing to be bound by the terms of the Greek Collective Agreement; the vessel was registered in Greece and flew the flag of the Kingdom of Greece; the doctors reside and medical treatment was accorded in Japan and, if any treatment was thereafter accorded the libelant, in Greece. If Judge Winter's first opinion is on a sound basis (and this Court believes that it is), there exists no reason to exercise jurisdiction.[3]

There remain, however, certain allegations with respect to wages pertaining to "waiting time" and other alleged violations of seamen's wage statutes enacted by Congress. If these allegations are in good faith, it is mandatory to exercise jurisdiction—at least for this purpose, Giatilis v. The Darnie, D.C.Md., 171 F.Supp. 751—and perhaps for all purposes. Until the "good faith" of the allegations relating to the first and second causes of action is sufficiently explored, it is not appropriate to enter any order herein either accepting or declining jurisdiction.

2. Proctor for libelant directs our attention to the later decision of Judge Winter in the same case, Mpampouros v. Steamship Auromar, D.C.Md., 1962, 205 F.Supp. 14, where the court permitted the filing of an amended libel alleging, upon other matters, that one of the respondents, Eastern Steamship Agency, Inc., a corporation organized and existing under the laws of the State of New York, was the owner *pro hac vice* of the vessel. When the first opinion was handed down, 203 F.Supp. 944, Eastern Steamship Agency, Inc., had not been served with process and was not before the court. Obviously this respondent was thereafter served and was before the court at the time Judge Winter permitted the filing of the amended libel, 205 F.Supp. 14. In the instant case, we do not have that situation. In fact, Judge Winter's second opinion reaffirms his prior holding on the crucial issue now under consideration by this court. Proctor for libelant has advised this court that, following the second opinion of Judge Winter, the case in Maryland was settled for $7,500.00. This adds nothing to the overall picture except to note that there may have been merit to the allegation that a New York corporation was the owner *pro hac vice* of the foreign flag vessel.

3. This question has been handled in varying ways by different courts. Gkiafis v. Steamship Yiosonas, 4 Cir., 342 F.2d 546 (dealing with the subject of service of process as related to quality and quantity of contracts, locus of cause of action, etc.); Gkiafis v. Steamship Yiosonas, D.C.Md., 1966, 254 F.Supp. 825 (on motion to decline jurisdiction following remand in 342 F.2d 546); Karros v. S/S Liryc, E.D.Va.1965, 247 F.Supp. 554 (medical treatment rendered in Virginia following injury on high seas with vessel bound for Virginia). The Court acknowledges that there is a conflict on this issue in the district courts in the Southern District of New York. In practically every case, however, there has existed more than the factor of ultimate stock ownership where jurisdiction is exercised.