**Nicolaos GIATILIS**

v.

**THE** Steam Tanker **DARNIE,** her engines, hull, tackle, cargo and appurtenances; and United Cross Navigation Corp., a body corporate.

**No. 4023, Admiralty.**

United States District Court
D. Maryland.

April 1, 1959.

Stanley I. Morstein, Karl F. Steinmann and George Psoras, Baltimore, Md., for libelant.

Randall C. Coleman, Jr., and Ober, Williams, Grimes & Stinson, Baltimore, Md., for respondents.

THOMSEN, Chief Judge.

Libelant is a Greek citizen residing in Greece. The Liberian S/T Darnie is owned by respondent, United Cross Navigation Corp., a Liberian corporation, whose stockholders are Greek nationals residing in Greece. The original libel, in rem against the Darnie and in personam with clause of foreign attachment against her owner, alleged four causes of action: (1) for personal injuries caused by negligence of respondents; (2) for negligent failure to provide proper medical care; (3) for personal injuries caused by unseaworthiness; and (4) for maintenance and cure. An amended libel added (5) a claim for wages and penalties under 46 U.S.C.A. §§ 596, 597. The immediate problem is whether this court, in the exercise of its discretion, should decline jurisdiction of the four claims or causes of action which comprised the original libel and which are included in the amended libel along with the wage claim.

■ Libelant originally joined the Darnie in June 1957 in Bayonne, N. J., signing Liberian articles, but was discharged in Brazil in December 1957 for an operation. He rejoined the Darnie in January 1958 in Campana, Argentina, and signed new Liberian articles calling for wages at £42 per month, plus 50¢ per hour for overtime. On February 28, 1958, he signed a paper acknowledging receipt of wages in full to that date. On April 14 or April 15 he was injured at sea, while cleaning tanks. Libelant claims the accident occurred on April 14, while the vessel was within three miles of the Florida coast; respondents contend the accident occurred on April 15, more than three miles off shore. The exact location of the vessel at the time of the accident is unimportant in this case because, all circumstances considered, the law of the flag—Liberian law—controls.[1] Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254; Romero v. Int' Operating Co., 79 S.Ct. 468. There is a dispute about what libelant did or was required to do after the accident, but the vessel arrived in Baltimore on April 17, and libelant was promptly taken to the U.S.P.H.S. hospital. His principal trouble was an abscess on his left ankle. The Darnie, having arrived at Baltimore empty, was laid up and the crew was paid off on April 17.

The master's records showed net wages of $233.24 due libelant, but he could not be paid off or discharged without the ap-

1. The Liberian Maritime Code, Title IX, entitled "Substantive Provision", as amended December 22, 1949, provides: "In so far as it does not conflict with any other provisions of this Act, the non-statutory general Maritime Law of the United States of America is hereby declared to be and is hereby adopted as the general Maritime Law of the Republic of Liberia." Liberian Code of Laws, 1956.

proval of the Immigration and Naturalization Service. 8 U.S.C.A. §§ 1282(a), 1286; United States v. Seaboard Surety Co., D.C.D.Md., 140 F.Supp. 876, affirmed 4 Cir., 239 F.2d 667. Libelant remained in the U.S.P.H.S. hospital in Baltimore until June 9, and was an outpatient for several days thereafter. On June 13 he was certified fit for travel, but not fit for duty. On June 16 the I.N.S. granted permission to the ship to pay off and discharge libelant. He was paid $150 that day on account of his wages, and was paid $83.24 three days later. He made no claim for additional wages at that time. On June 22 he was flown to Greece at respondents' expense. All his travel expenses had been paid to him. Since his arrival in Greece libelant has been examined and treated at respondents' expense by several doctors, at least one of whom was selected by libelant. He has been paid $600 on account of maintenance and cure.

██ This court must retain jurisdiction of the claim for wages and penalties under 46 U.S.C.A. §§ 596, 597. The Fletero v. Arias, 4 Cir., 206 F.2d 267; Spero v. The Argedon, D.C.E.D. Va., 150 F.Supp. 1. That claim is based: (1) upon libelant's statement that he was entitled to 160 hours overtime and was allowed only 98 hours, a difference of $31; and (2) upon his contention that he is entitled to wages until his discharge on June 16, despite the facts that the voyage ended on April 17, that he was not aboard the ship after that date but was an inpatient at the U.S.P.H.S. hospital, and that the delay in his formal discharge was due to the requirements of United States statutes and regulations. The fact that he was a patient at the hospital would not have prevented him from recovering his wages to the end of the voyage, if the voyage had lasted beyond April 17, but he is not entitled to recover wages under 46 U.S.C.A. §§ 596, 597, for any period beyond the end of the voyage. Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L. Ed. 850; Gilmore and Black, The Law of Admiralty, p. 268. The practice is uniform in this respect, and there is no authority to the contrary.[2] Of course, in the instant case, if libelant is entitled to recover on the grounds of either unseaworthiness or negligence, his damages may include lost wages as well as maintenance and cure.[3] Penedo Cia Naviera S.A. v. Maniatis, 4 Cir., 262 F.2d 284, 287. But the claim we are presently considering is for wages under 46 U.S.C.A. §§ 596, 597, another matter altogether. Under that statute this court must decide whether libelant was entitled to $31 for the additional 62 hours of overtime claimed. That matter will be set for hearing promptly.

██ The joinder of a wage claim over which the court has jurisdiction is a factor to be considered in determining whether the court should retain jurisdiction over the other causes of action, but it does not *require* the court to retain such jurisdiction. The Fletero v. Arias, supra; Heredia v. Davies, 4 Cir., 12 F.2d 500; O. & Y. Nuri v. The Johanna, 4 Cir., 210 F.2d 261; Kolios v. S.S. Pelops et al., D.C.Md., Adm. No. 3550, Chesnut, J., unreported. The wage claim in this case was added by amendment to the libel after libelant had returned to Greece, but there are reasons to explain the delay, and I do not find that the claim is frivolous; however, the major portion of the claim is clearly without merit, and its joinder is entitled to little weight in determining whether this court should retain jurisdiction of the principal controversy. The factors which govern the decision of that question are discussed

---

2. The Prahova, D.C.S.D.Cal., 38 F.Supp. 418, upon which libelant relies, was based upon different facts and principles. The libelant in that case remained aboard a Roumanian vessel after he had been suspended but not discharged by the master; he was held entitled to his wages until he was properly discharged after a change of flag. There was no evidence that the voyage had ended before his discharge.

3. Because while working aboard a ship a seaman receives his stipulated wage and found.

in Gulf Oil v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055, and Canada Malting Co. v. Paterson Steamships Co., 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837.

Most of the witnesses on the issues of unseaworthiness, negligence, failure to supply medical attention on the ship, and libelant's present condition, are Greeks, living in Greece or employed on ships all over the world. Most of them speak Greek and not English. It is obvious that testimony, in court or by deposition, of Greeks questioned by Greeks in Greek, will be better understood by a Greek judge than translations of such testimony would be understood by this court. Moreover, the important witnesses will not be subject to process issuing out of this court; many of them will be subject to process in Greece. Respondent United Cross Navigation Corp. has a general agent in Greece and also a general agent in New York; but it has no general agent, office, or place of business in Maryland and has not qualified to do business in Maryland. It has agreed not to contest the jurisdiction of the courts of Greece over any suits that may be filed against it by libelant, and to accept service of process therein through its general agent, Carras (Hellas), Ltd., of Piraeus, Greece. The vessel's underwriters have agreed that if this court declines jurisdiction, or retains jurisdiction only of the wage claim, and if libelant files suit in Greece against the Darnie and/or United Cross Navigation Corp., the underwriter will guarantee up to $110,000 the payment and satisfaction of any judgment or decree that may be entered or any settlement that may be properly agreed to in such suit. That is the same security provided in this court. Translations of the medical reports from the U.S.P.H.S. hospital and doctors in Baltimore can be checked by representatives of libelant and respondents here; those records and the testimony of those doctors will not be as important as the testimony of the doctors who have been treating libelant since he returned to Greece and who are familiar with his present condition.

Upon consideration of all the relevant factors, I conclude that this court should not retain jurisdiction of any of the causes of action included in the amended libel except the claim for wages and penalties under 46 U.S.C.A. §§ 596, 597.

Counsel will prepare an appropriate order.