Nicoloas SANTORINAKIS, Libellant,

v.

THE S.S. ORPHEUS, her engines, boats, etc., in rem and Orpheus Marine Transport Corporation of Panama, a foreign corporation or association, as owners, operators and agents of said vessel, in personam, Respondents.

No. 7878.

United States District Court
E. D. Virginia,
Norfolk Division.

Sept. 11, 1959.

**344**

Sidney H. Kelsey and Peter K. Babalas, Norfolk, Va., for libellant.

Seawell, McCoy, Winston & Dalton, John W. Winston, Norfolk, Va., for respondents.

WALTER E. HOFFMAN, District Judge.

Libellant, a Greek seaman holding a chief steward's license, was injured on August 17, 1957, on board the steamship Orpheus, a Greek flag vessel owned by the respondent Panamanian corporation. The vessel was in the process of leaving the dock at Hamburg, Germany, when the accident occurred. As illegal advances of wages were made to libellant in United States ports, this Court exercised jurisdiction over the entire controversy following the arrest of the vessel at Norfolk, Virginia.

The law of the flag must control the substantive rights of the parties in determining the action for personal injuries. Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254; Samad v. S. S. Etivebank, D.C., 134 F.Supp. 530. We look, therefore, to the substantive law of Greece. From the evidence presented on this subject in this particular case, there is no liability for injuries sustained by a seaman where the sole basis for recovery is the unseaworthy condition of the vessel. A recovery may be had where negligence is established and, in such event, the contributory negligence serves to mitigate the damages. In summary, the right to recover for negligence is substantially the same under Greek law as in this country, but the doctrine of unseaworthiness is essentially unknown in Greece as giving rise to a cause of action for an injured seaman, unless, of course, what may be characterized as unseaworthiness is tantamount to negligence.

Libellant contends that he was injured when, in boarding the vessel, he stepped upon the deck and, after taking several steps, slipped and fell due to coal dust and small particles of coal which remained on the deck following discharge operations.

There is a sharp conflict in the evidence as to the details of the accident. Certain undisputed facts reveal that the vessel had docked at Hamburg on August 14, 1957, with its port side to the dock. She was loaded with coal and her five holds were discharged by the use of dock cranes and buckets. Discharge operations were completed at 2:30 p. m. on August 17, which was the day of the accident. At approximately 3:00 p. m., the libellant went ashore for personal reasons, although he knew of the scheduled sailing time of 5:00 p. m., and he had no express permission to leave the vessel at a time when the ship was being prepared for departure. From 2:30 p. m. until 5:00 p. m., the deck crew was occupied in repairing damage caused by the stevedores. According to the log,[1] the pilot boarded the vessel at 5:20 and, with the aid of three tugs, the ship left the dock. While the tugs were in the process of taking the boat away from the dock, libellant appeared and was directed to

---

1. Libellant testified that the ship sailed at approximately 4:45 p. m., and this accounts for the fact that he was not aboard the vessel when she left the dock.

This estimate of time is rejected but, if correct, it affords no excuse to a seaman cognizant of his duty to be aboard well in advance of sailing.

board a launch. A rope ladder with wooden steps was lowered on the starboard side, near the middle of the vessel approximately opposite the No. 3 hatch. Libellant managed to ascend this ladder a distance of approximately 17 feet to the ship's rail. Slightly forward of the rope ladder were steps leading from the deck to the rail to accommodate the pilot in leaving the ship. Slightly aft of the rope ladder were bitts attached to the deck. Respondent contends that libellant, in descending from the railing to the deck, put his foot upon the bitts, slipped, and fell to the deck. Libellant does not specifically state what means he used to reach the deck but, if his testimony is accepted, this is immaterial as he testified that he had taken several steps on the deck before falling.

Analyzing the hopeless conflict in the evidence, it is apparent that bitterness existed between the members of the crew testifying for the respondent and the libellant. The charge that libellant was very intoxicated is not supported by credible evidence, although it is rather apparent that he had been drinking. If negligence is established, the contributory negligence of the libellant would substantially reduce any award to which he would otherwise be entitled—not only with respect to his drinking and his failure to exercise due care for his own safety in proceeding along a deck which he knew to be covered with coal dust made slippery by rain, but also because of the fact that he was boarding a vessel under circumstances created by his own failure to be present prior to scheduled sailing time.

We do not reach a consideration of these points. Bearing in mind the fact that unseaworthiness plays no part in this case, and that negligence provides the sole ground of recovery, it cannot be said that a vessel discharging coal must wash down its decks before leaving the dock. All the testimony points to a practice of washing the decks after the vessel is underway. To hold the shipowner guilty of negligence—as contrasted with unseaworthiness—would

require the vessel to remain tied to the dock until the hatches were covered, the booms secured, and the decks washed down—all of which would require the deck crew to be busily engaged for a period of approximately five hours. There is no suggestion that the accepted practice or duty requires such action and, in the absence of any breach of duty, there can be no negligence. No opinion is expressed on the subject of unseaworthiness as applied to the facts of this case.

Libellant does not insist that respondent was negligent in permitting coal dust or small particles of coal to fall upon the deck. The allegation of negligence is that the decks were not washed down promptly, i. e., prior to the time the vessel left the dock. This would require a completed job of washing all decks for, as noted, libellant actually boarded the vessel on the starboard side, whereas he would have come aboard on the port side under ordinary circumstances. To hold respondent liable under such circumstances would be tantamount to making the vessel an insurer for the safety of its crew members. Certainly, if libellant had slipped on coal dust during actual discharge operations, he could not recover based solely upon proof of slipping on the deck. In the present proceeding negligence is not established in the absence of proof of an accepted custom that the decks must be washed down prior to leaving the dock. Of course, the vessel would be liable for negligence if the decks were not cleaned within a reasonable length of time.

Proctors have agreed that if damages are not allowed for the injury, sick wages are recoverable under the Greek Collective Agreement. On this basis, libellant would be entitled to sick wages pursuant to that Agreement from September 26, 1957, until October 21, 1957, on which latter date libellant signed on another vessel at higher wages. The maintenance has been fully paid.

This brings us to a consideration of the advances against unearned wages paid to libellant in ports of the United

States contrary to the statute, 46 U.S.C.A. § 599. Respondent initially claimed that these advances were made by the master personally, and not in his capacity as representative of the owner or the vessel. It is extremely doubtful that such an argument could be successfully urged even if supported by the evidence which, in this case, it is not. In a cross-libel filed by the owner, it is conceded that illegal advances aggregating $123 were paid to libellant, but respondent states that libellant was indebted to the cross-libellant in the sum of $292.60, and that the cross-libellant is entitled to a decree for $169; same representing the difference between the amount respondent must pay to libellant for the illegal advances and the total amount due to the respondent and cross-libellant.

It is fundamental that advances made contrary to the provisions of the statute cannot be credited against the wages due to the seaman for the voyage. Korthinos v. Niarchos, 4 Cir., 175 F.2d 730, certiorari denied 338 U.S. 894, 70 S.Ct. 241, 94 L.Ed. 550. It is equally clear, however, that advances made in foreign countries against unearned wages are valid if in accordance with the law of the foreign country. Sandberg v. McDonald, 248 U.S. 185, 39 S.Ct. 84, 63 L.Ed. 200. There is nothing in the letter or spirit of the statute which would preclude the cross-libellant's right to recover for the legal indebtedness due by the seaman. The evidence establishes that the funds advanced were included on the wage account as funds of the vessel and its owner, and not that of the master in his own right. While the practice of denying such advances in the initial stages of the litigation is not to be condoned, there is no authority to support the view that this act alone is sufficient to justify a dismissal of the cross-libel.

A decree will be entered in conformity with this memorandum. Respondent will be directed to pay the costs due the Clerk and the Marshal and, except as noted, each party will pay his respective costs.