Theodoros KONTOS, Libellant-Petitioner,

v.

THE Liberian S.S. SOPHIE C., her boats, engines, tackle, apparel, etc.; Peter Paul Vucetic and John Doe, both non-residents, individually, and as Masters; and Southern Star Shipping Co., Inc. and Excelsior Shipping Co., Ltd., both foreign corporations or associations, as owners and/or operators of the Liberian S.S. Sophie C., Respondents.

George ZARIFIS, Libellant-Petitioner,

v.

THE Liberian S.S. SOPHIE, C., her boats, engines, tackle, apparel, etc.; Peter Paul Vucetic and John Doe, both non-residents, individually, and as Masters; and Southern Star Shipping Co., Inc. and Excelsior Shipping Co., Ltd., both foreign corporations or associations, as owners and/or operators of the Liberian S.S. Sophie C., Respondents.

Nos. 269, 273 of 1959.

United States District Court
E. D. Pennsylvania.
June 13, 1960.

Sidney J. Smolinsky (of Dorfman, Pechner, Sacks & Dorfman), Philadelphia, Pa., for libelants.

Harrison G. Kildare (of Rawle & Henderson), Philadelphia, Pa., for respondents.

GOODRICH, Circuit Judge.

These two cases are libels in admiralty brought by the libelants, Zarifis and Kontos, claiming damages for injuries due to negligence and unseaworthiness and maintenance and cure. The libelants move to amend their libels by adding counts for wages and penalties under 46 U.S.C.A. §§ 578, 596, 597 and 599; the respondents move to dismiss. The two cases present the same problems and may be disposed of in one opinion.

The set of facts, so far as we have them, is a law teacher's delight for an examination problem. The libelants are Greeks. They have left the United States and are presently in Greece. The men shipped on the Sophie C., which carries the Liberian flag. Whether they signed articles or not is uncertain.[1] The respondents say that the Sophie C. is owned by a British corporation and that the sole shareholder is a citizen of the Argentine Republic; the libelants say that they lack sufficient knowledge to form a belief as to the truth of these averments. The Court does not think the last point is of great importance anyhow, certainly not at this stage. The acts complained of by Kontos took place in Japan where it is also alleged that insufficient medical treatment was provided. There was medical care afforded in San Francisco and a medical recommendation was made and allegedly ignored by respondents. It is not alleged where Zarifis first began to feel pain in his feet or where it was that he suffered the injury to his back, but it is alleged that there was a failure to provide medical attention and treatment while the ship was docked at Houston, Texas. It is also alleged that Zarifis was given improper medical care in Holland. It is complained that a continuing obligation for maintenance and cure has been violated after the libelants' arrival in Greece. The respondents have moved to dismiss. They express a willingness to accept service in Greece and to provide the same security there as has been provided here. The libelants resist the motions.

■ The motions to dismiss are supported by two arguments. The first is that the court lacks jurisdiction to deal with the case. For this proposition there is urged Lauritzen v. Larsen, 1953, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 and Romero v. International Terminal Operating Co., 1959, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368. Reliance upon these cases for the point made is badly grounded. The problem in each, insofar as is relevant here, was not whether a United States district court had jurisdiction to hear the case, but the question of what law should be applied.[2] It is sun-clear

[1.] The Court was told in argument that at least one of the libelants signed articles and that these articles contain a provision that Greek law shall govern. But, since the articles are not before the Court and not in the record, the Court has no knowledge of the accuracy of this statement except its recollection of what counsel said.

[2.] The Court in Romero did indeed decide certain jurisdictional questions [358 U.S. 354, 79 S.Ct. 489]. Petitioner there had contended that a claim for relief under general maritime law was a claim which "arises under the Constitution, laws, or treaties of the United States" and that, therefore, federal jurisdiction could be invoked under 28 U.S.C.A. § 1331 and petitioner could thus have all the procedural advantages available in a suit on the "law side" of the federal district court. The Court rejected this contention, but held that the district court had "pendent jurisdiction" over the petitioner's claims under the general maritime law by virtue

from the reading of the first paragraph after the statement of facts of the Court's opinion in each case, 345 U.S. at pages 574–575, 73 S.Ct. at page 924; 358 U.S. at page 359, 79 S.Ct. at page 473, that the whole discussion that followed proceeded on the theory that the court did have authority to hear and decide. Then the Supreme Court turned its attention to the question how the case should be decided.[3] The first argument of the respondents is, therefore, rejected as unsound.

■ The second point made is that the case should be dismissed on the doctrine of forum non conveniens.[4] It is urged that there is little in the case to connect it with anything in the United States. The libelants are Greeks and presumably, say the respondents, the witnesses will be Greeks so far as members of the crew of the Sophie C. at the time the acts complained of took place are necessary as witnesses; medical testimony from all parts of the world will probably be necessary. The argument is that this case has so many foreign elements and so little with which a United States court is, or could be, familiar that the parties should be directed to take their lawsuit elsewhere and the libel here dismissed.

The problem is a difficult one. The Court thinks that the weight of argument is against sending these libelants

elsewhere. If this is a case where the law of the flag governs the rights of the seamen, the following provision of the Liberian Maritime Law is in point:

"§ 30. Adoption of general American Maritime Law.—Insofar as it does not conflict with any other provisions of this Title, the non-statutory general Maritime Law of the United States of America is hereby declared to be and is hereby adopted as the general Maritime Law of the Republic of Liberia." Liberian Code of Laws of 1956, tit. 22 § 30.

There can be little doubt that a United States Court is as fully, or perhaps more, competent to apply the "nonstatutory general Maritime Law of the United States" as is a court in Greece. While the respondents say they will accept service and post security in Greece we do not know whether time will have barred the action there. Neither do we know whether a Greek court would take jurisdiction over matters concerning a Liberian ship.[5]

It is true that if the case is tried in this country there will no doubt have to be interpretations of depositions taken in Greek and translated into English. But trial by deposition might well be necessary if the case is tried in Greece because if these witnesses are seamen there is no telling where they will be at any particular time.[6] Insofar as testi-

of their joinder with claims asserted under the Jones Act, 46 U.S.C.A. § 688.

For discussions of various aspects of the Romero decision, and its implications, see Currie, The Silver Oar and All That: A Study of the Romero case, 27 U.Chi.L. Rev. 1 (1959) and Kurland, The Romero case and Some Problems of Federal Jurisdiction, 73 Harv.L.Rev. 817 (1960).

3. It is interesting to note that while respondents rely on Conte v. Flota Mercante Del Estado, 2 Cir., 277 F.2d 664, for their second proposition, they completely ignore the following statement therein: "Respondent concedes as it must that its objection does not go to the jurisdiction of the District Court, The Belgenland, 1885, 114 U.S. 355, 5 S. Ct. 860, 29 L.Ed. 152; Lauritzen v. Larsen, 1953, 345 U.S. 571, 575, 589–590,

73 S.Ct. 921, 97 L.Ed. 1254, but only to whether the District Court abused its discretion in retaining this." 277 F.2d at page 667.

4. For a good discussion of this area of the law, see Bickel, The Doctrine of Forum Non Conveniens as Applied in the Federal Courts in Matters of Admiralty, 35 Cornell L.Q. 12 (1949).

5. Bickel says that we must start "with the proposition, which follows from the existence of jurisdiction in the first place, that a case will be retained whenever it is not perfectly clear that plaintiff can recover elsewhere if the facts he alleges are true." Id. at 28.

6. As Chief Judge Biggs said in Medich v. American Oil Co., D.C.E.D.Pa.1959, 177 F.Supp. 682, 683: "[B]y the nature of

mony of a San Francisco physician or hospital authority is necessary, that presents no more problem than in any other case tried in one of our courts where operative facts have occurred elsewhere.

■ It should be remembered that the selection of the forum is in the first instance a matter where the plaintiff's choice is to be made and where, other things being equal, or nearly equal, it should control. If there is difficulty in proving the case and the libelants are unable to support their claim by adequate testimony, they will fail. That burden is on them. The conclusion, therefore, is that the balance of convenience indicates that the case should be retained here.

The permission asked by the libelants, to amend their libels, will be granted. If the claims were not made at the time of the original libel, it is to be borne in mind that counsel in Virginia was preparing the libels while counsel in Philadelphia was handling the cases once service was had in Philadelphia. It is desirable to have all this litigation disposed of in one lawsuit. Since the conclusion has been reached that the main case should not be dismissed, there appears to be no reason why the amendments should not be picked up and taken care of at the same time.

As the above discussion indicates, the answer to the forum non conveniens question is not an open and shut affair. If the Court is incorrect in the view here expressed, it would be unfortunate to have the parties go through a trial on the merits and then have the case thrown out because the forum was considered an inconvenient one. Therefore, if the respondents wish to appeal and will submit the required certificates the Court will sign them.

their employment seamen are often unavailable as witnesses and their testimony must then be submitted in deposition form." The fact that an American court would require translations of depositions rather than the originals does not seem to be too great an obstacle. But cf. Giatilis v. The Darnie, D.C.D.Md.1959, 171 F.Supp. 751, 754.

Order

On this thirteenth day of June, 1960, the motions made by the libelants for amendments are granted. The motions to dismiss are denied.

We do not, of course, consider the possibility of a federal district judge being fluent in Greek, although one never can tell. See The Prahova, D.C.S.D.Cal. 1941, 38 F.Supp. 418, 421, in which Judge Yankwich explains how his proficiency in French and Roumanian made it easier for him to go through the documentary evidence in that case.