**Charilaos GKIAFIS**

v.

**STEAMSHIP YIOSONAS, her engines, boilers, boats, tackle, apparel and furniture, and Cia. Nav. Coronado, S.A., Panama, Owners and/or bareboat charterers.**

No. 4339.

United States District Court
D. Maryland.
Sept. 11, 1963.

254

John J. O'Connor, Jr., O'Connor & Preston, Baltimore, Md., Augustus Anninos, Howell, Anninos & Daugherty, Norfolk, Va., of counsel, for libellant.

Randall C. Coleman, Ober, Williams, Grimes & Stinson, Baltimore, Md., Charles F. Tucker, Vandeventer, Black, Meredith & Martin, Norfolk, Va., of counsel, for respondents.

R. DORSEY WATKINS, District Judge.

This libel is brought by a Greek seaman against the Steamship Yiosonas, a vessel registered under the Greek flag, and against the vessel's owner, Coronado Compania Naviera, S.A. (Coronado), a Panamanian corporation, to recover damages arising out of personal injuries allegedly sustained by libellant while aboard said vessel in the Port of Baltimore on September 2, 1961; negligence on the part of Coronado and unseaworthiness of the Steamship Yiosonas being asserted. The case is presently before the court on corporate respondent Coronado's motion to quash service of process and dismiss the libel for the principal reason that it has not done and is not doing business within the State and District of Maryland.

Suit was originally filed in the United States District Court for the Eastern District of Virginia, Norfolk Division, on September 26, 1961. That court on motion of the respondent Coronado quashed and vacated substituted service of process made upon the Clerk of the State Corporation Commission of the Commonwealth of Virginia as alleged statutory agent of said respondent when it was shown that the Steamship Yiosonas had called at the Port of Hampton Roads on only one occasion, i. e. in August of 1961. Thereafter upon motion by libellant the libel was transferred to this court.

In this district service of process on the corporate respondent was originally attempted by serving the Secretary of State pursuant to the provisions of the Waterways Statute, Article 75, section 77(a) of the Annotated Code of the Public General Laws of Maryland, 1957 Edition. Since this statute provides for substituted service only in those cases in which suit is brought by a Maryland resident, attempted service where libellant was a nonresident was admitted to be invalid. Subsequently service on the corporate respondent was purportedly effected upon the Department of Assessments and Taxation pursuant to the pro-

visions of Article 23, sections 87–99, Annotated Code of Public General Laws of Maryland, 1957 Edition. Coronado, appearing specially, filed a motion to quash service of process and to dismiss the libel on the ground that neither at the time of the service of the writ of summons nor at any previous time or subsequent time had it been doing business in the State of Maryland, nor had it qualified to do business nor had it a resident agent or any other person in the state upon whom service of process could be made. At the hearing on this motion proctors for the respondent contended in addition that, even if respondent were found to have done or be doing business in Maryland, sections 97 and 98 of Article 23 providing for substituted service and further specifying the duties of the Department of Assessments and Taxation with respect to such service are unconstitutional for the reason that the provisions of the statute are not reasonably calculated to insure that a foreign corporation is notified of the suit.

The extent and nature of respondents' activities within the State of Maryland were testified to by Mr. Harrison, Vice President of Terminal Shipping Company, a ship agent in the Port of Baltimore. There is no dispute as to the facts. The Steamship Yiosonas is a tramp steamer which does not maintain a regular sailing schedule. She operates on voyage charters, her ports of call, by the terms of the charter parties, being at charterers' option with the corporate respondent retaining no control thereover. The vessel, formerly known as the Steamship Vassilis and owned by Coronado, arrived in the Port of Baltimore on January 13, 1953 and sailed on January 21, 1953 for Japan having loaded a cargo of 9,576 tons of soya beans. On July 25, 1953 she called at Baltimore to discharge a cargo of iron ore from Narvik, Norway.

She revisited Baltimore on August 6, 1955 and sailed on August 15, 1955 having loaded 9,900 tons of coal for Rotterdam. On September 18, 1955 she again arrived in Baltimore and sailed on September 19, 1955 having loaded 10,138 tons of coal for Rotterdam. She did not call at Baltimore again until September of 1961, the time of libellant's accident, her name then being the Steamship Yiosonas. The vessel arrived at anchor September 3, docked September 4, notice of readiness was tendered at 0900 on September 5 and she sailed September 13. She has been in the Port of Baltimore only once since then and that was on May 23, 1962 to discharge a cargo of iron ore from Karachi, Pakistan. She sailed from Baltimore on May 25, 1962. The respondent owns no vessels other than the Steamship Yiosonas, has never owned any other vessels and is not represented in the State of Maryland by any company other than Terminal Shipping Company, the husbanding agent for the Steamship Yiosonas. Terminal Shipping has not and does not deal with the vessel owner but solely with the owner's general agent in London, A. Lusi, Ltd., and the sub-agent in New York, Argonaut Trading Agency, Inc. Terminal Shipping Company was engaged by A. Lusi, Ltd. to represent the Steamship Yiosonas when she called at Baltimore. It, however, is customary for the charterer's agent to take over the handling of a vessel after tendering of the notice of readiness. It is against this factual background that the question must be answered—did the Steamship Yiosonas call at the Port of Baltimore with such frequency or perform such acts as to subject Coronado to suit within the State of Maryland on the ground that because of its activities as the vessel's owner [1] Coronado was doing or had done business within the State of Maryland within the

---

[1]. Respondent has argued that a vessel owner is not doing business when its vessels call at a port at the instance of the charterers. There is, however, authority to the effect that if the shipowner under a voyage charter allows the voyage charterer to select the ports of call, the vessel owner is doing business wherever the charterer is doing business. (Hoodye v. Bruusgaard Krosterud Skibs A/S Drammen, Norway et al., D.C.S.D.Texas 1961, 197 F.Supp. 697, 698).

meaning of Article 23, section 92(b) (1) [2] or 92(c) (1) [3], the Annotated Code of Public General Laws of Maryland, 1957 Edition.

The starting point of any such consideration is, of course, the decision of the Supreme Court of the United States in International Shoe Company v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. There the court stated:

"* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' * *

"Finally, although the commission of some single or occasional acts of the corporate agent in a state sufficient to impose an obligation or liability on the corporation has not been thought to confer upon the state authority to enforce it, Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516 [43 S.Ct. 170, 67 L.Ed. 372], other such acts, because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit. * * *

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative." (326 U.S. 310, 316, 318, 319, 66 S.Ct. 154, 158, 159–160, 90 L.Ed. 95).

It should be noted at the outset that the constitutional test to be applied is both qualitative and quantitative (International Shoe Company v. State of Washington, supra, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Novitski v. Lykes Steamship Co., D.C.E.D.Pa.1950, 90 F.Supp. 971, 972). Conceivably, under the principles announced in the International Shoe Company case a single business act of a corporation could be so significant as to subject the corporation to suit. Chief Judge Simon E. Sobeloff of the United States Court of Appeals for the Fourth Circuit has commented upon the International Shoe Company case by saying "The door is now open for jurisdiction in such ["one act" situation] cases under the minimum contact test in any state whose legislature passes the necessary empowering acts. It would not be an unreasonable price to require of foreign defendants entering a state for their advantage, to hold them amenable to the state's justice in controversies arising therefrom." (Sobeloff, Jurisdiction of State Courts Over Nonresidents in our Federal System, 1957, Cornell Law School, Frank Irvine, Lecture, page 12). Thus a consideration of Maryland statutory provisions is in order to ascertain how broad a jurisdictional power the Maryland Legislature has attempted to assert.

Long before the decision in International Shoe Company case Maryland had enacted legislation making one transaction foreign corporations amenable to suit in Maryland. Jurisdiction is narrowly asserted, however, and is limited to suits (1) by a resident or a person having a regular place of business in Maryland (2) on a cause of action arising

2. Article 23, § 92(b) (1)—"*Causes of action which subject corporation to suit by nonresident.*—Every foreign corporation doing intrastate or interstate or foreign business in this State shall be subject to suit in this State by a nonresident of this State, (1) on any cause of action arising out of such business. * * * "

3. Article 23, § 92(c) (1)—"*When corporation has ceased to do intrastate or interstate or foreign business in Maryland.*—Every foreign corporation which has heretofore done or hereafter does intrastate or interstate or foreign business in this state shall be subject to suit in this State although such foreign corporation has ceased to do business in this State, (1) by a resident or nonresident of this State on any cause of action arising out of such business. * * * "

out of a contract made or acts done in Maryland. (Article 23, sub-section 92 (d), Annotated Code of Public General Laws of Maryland, 1957 Edition). In the instant case jurisdiction is not and could not be asserted under this sub-section as libellant is not a resident.[4]

■ The Maryland Legislature has further expressly limited jurisdiction by providing specifically that an isolated transaction shall not constitute the doing of intrastate business. (Article 23, sub-section 88(b) (6)). Although there is no evidence that respondent ever engaged in any activity that could be characterized as intrastate business, its doing of business in Maryland, if any, being purely foreign business, it is still helpful by way of analogy to refer to sub-section 88(b) (6) when construing the meaning of the term "doing business" as it appears in sub-sections 92(b) and (c) of Article 23, the only sections under which jurisdiction could possibly exist for if an isolated intrastate transaction does not constitute the doing of intrastate business, it logically follows that an isolated interstate or foreign transaction is not sufficient to subject the foreign corporation engaging in such a transaction to the jurisdiction of the court.

An exact definition of the word "isolated" as used in sub-section 88(b) (6) has never been formulated by the Court of Appeals of Maryland. The word is not synonymous with "single" or "one" transaction. Article 23, sub-section 88 (b) (6) of the Annotated Code of Public General Laws of Maryland, 1957 Edition, provides:

" * * * (b) *Activities not considered intrastate business.*—Without excluding other activities which may not constitute doing intrastate business in this State, a foreign corporation shall not ˜be considered to be doing intrastate business in this State, for the purposes of this article, by reason of carrying on in this State any one or more of the following activities:

\* \* \* \* \* \*

"(6) Conducting an isolated transaction *not in the course of a number of transactions of like nature.*" (Emphasis supplied).

The word "course" in this context "contemplates a sequence of events or a succession of acts connectedly followed." (20 C.J.S. Course, page 1303).

In discussing the meaning of the phrase "isolated transaction" The Corporation Trust Company in a pamphlet entitled "What Constitutes Doing Business" has summarized the various statutes enacted by the states as follows:

"Many states have provided specifically by statute that an isolated transaction will not constitute business so as to require qualification. These provisions do not take the place of the decided cases, since the question of what is an isolated transaction to a large extent must still be answered on the basis of these decisions. Some clarification of the question is afforded, however, in those statutes which set a specific time limit on the permissible duration of the isolated transaction.

"Eight states, Alaska, Connecticut, Hawaii, Iowa, North Dakota, Oregon, Texas and Utah, provided that 'conducting an isolated transaction completed within a period of thirty days and not in the course of a number of repeated transactions of like nature' will not constitute doing

4. Parenthetically it might be noted that libellant is a Greek seaman and that the accident occurred on a vessel under the Greek flag, which vessel is owned by a Panamanian corporation. Part of libellant's cause of action is asserted under the Jones Act. As to whether or not this Act is applicable, the Court, of course, expresses no opinion at this time. For cases dealing with the problem of the quantum of American contact necessary to sustain jurisdiction under the Jones Act see Southern Cross Steamship Company v. Firipis, 4 Cir.1960, 285 F.2d 651, 84 A.L.R.2d 895, cert. den. 1961, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859; Giatilis v. The Darnie, D.C.D.Md.1959, 171 F.Supp. 751; Mpampouros v. Steamship Auromar, D.C.D.Md.1962, 203 F. Supp. 944.

business so as to require qualification. The new Mississippi Business Corporation Act, effective January 1, 1963 contains exactly the same language, and the new South Carolina Business Corporation Act of 1962, effective January 1, 1964, contains substantially the same provision.

"In Maryland, the statute eliminates the specific time period, merely providing that 'conducting an isolated transaction not in the course of a number of transactions of like nature' will not require qualification.

"The North Carolina statute increases the period, providing that 'conducting an isolated transaction completed within a period of six months and not in the course of a number of repeated transactions of like nature' will not require qualification.

"In California, the statute provides that 'transact intrastate business' means entering into repeated and successive transactions of its business in this State, other than interstate or foreign commerce."

Where the line is to be drawn between an isolated transaction and activity sufficient to constitute the doing of business must then in the final analysis be determined by reference to the applicable case law. It has been uniformly held that "doing business" carries with it the connotation of regularity and continuity. Even in the International Shoe case where the test was not the doing of business, but rather was the "minimum contacts" test,[5] the court recognized the general principle that some single or occasional acts had not been thought to subject a foreign corporation to the jurisdiction of the court. Chief Judge Roszel C. Thomsen of this court in a recent case in which he had occasion to determine as a matter of Federal law whether or not the "doing business" requirement of the Federal venue statute (28 U.S.C.A. § 1391(c)) is satisfied by showing that the defendant was doing business in the district at the time that the cause of action arose as distinguished from still doing business in the district at the time that the suit was brought, noted that there is "a valid distinction between doing business continually and regularly in a state over a period of months or years" and mere use of the highways of the State.[6] (L'Heureux v. Central American Airways Flying Service, Inc., D.C. D.Md.1962, 209 F.Supp. 713, 716).

■ Granted that some regularity and continuity of activity is required to subject the corporate respondent to suit in this district the question for determination then becomes did the Steamship Yiosonas call at the Port of Baltimore with such frequency as to satisfy this requirement. A case directly on point is Carter v. Reardon-Smith Line, Ltd., 1925, 148 Md. 545, at pages 558–559, 129

---

5. The Maryland Court of Appeals has construed the minimum contacts test laid down by the Supreme Court as permitting a much broader assertion of jurisdiction than the Maryland Legislature has seen fit to authorize under the "doing business" test of the Maryland statute. (Compania De Astral, S.A. v. Boston Metals Company, 1954, 205 Md. 237, 259, 107 A.2d 357, 108 A.2d 372, 49 A.L.R.2d 646, cert. den. 1955, 348 U.S. 943, 75 S. Ct. 365, 99 L.Ed. 738).

6. Mere use of the waterways of Maryland will not subject a non-resident to a general personal jurisdiction. The Maryland Legislature has expressly limited jurisdiction by authorizing substituted service of process in the same manner and with the same effect as provided for in the Maryland Nonresident Motorist Statute only where the action grows out of an injury (1) to person or property of a Maryland resident (2) occurring in Maryland, and (3) resulting from the operation of the watercraft by said nonresident. (Article 75, section 77, Annotated Code of Public General Laws of Maryland, 1957 Edition). As noted in the beginning of this opinion in the instant case service of process was attempted originally under the Waterway Statute but was subsequently admitted by libellant to be inapplicable.

A. 839, at page 844, wherein the Court of Appeals of Maryland stated:

" * * * The word 'regularly' ordinarily implies uniformity, continuity, consistency, and method, and excludes the idea of an occasional, accidental, incidental, or casual use, and it must have been intended that it should have that meaning in the statute, because its obvious purpose is to qualify, narrow and limit the meaning of the phrase 'doing business,' and it could not have that effect, unless it were given its ordinary and accustomed meaning. Thus construed the irregular, occasional, or accidental use of the port of Baltimore by 'tramp' steamers would not constitute 'regularly doing business' or 'regularly exercising' corporate franchises within the state. In 1922, five 'tramp' steamers, owned by the appellee arrived and departed from Baltimore at intervals of from two days to several months; in 1923 three arrived and departed, and in 1924 two arrived and departed. These 'tramps' operated on no regular schedule, but sailed hither and thither over all seas and to all ports as the needs or the business of those who chartered them required, and whether they called at Baltimore or Hamburg or London or elsewhere was wholly uncertain and depended wholly upon the terms of each particular charter party. The owner of these ships could no more be said to be 'regularly doing' business in any one of these ports, because these 'tramps' called there, than would the owner of a garage be said to be doing business in a distant town or city because one who hired an automobile of him drove it there."

While at the time of the Carter decision the statute read "regularly doing business", as Professor Reiblich points out in an article entitled "Jurisdiction of Maryland Courts over Foreign Corporations Under the Act of 1937", 3 Maryland Law Review 35, 44–45 the "fact that the terms 'regularly doing business,'

as used in the old law, have been reduced in the present section to 'doing business' [wording of present Act of 1951, codified in Article 23, section 92] would not seem to effect any change in the corporations to be covered thereby. The cases interpreting the old statute indicated an intention in the statute to assert power as fully as the limits of due process of law allowed. The new statute could go no further if it intended to. Its continued use of the term 'doing business' would seem to be an indication of an intent to stay within the meaning of the concept as defined by the Supreme Court for purposes of assertion of jurisdictional power."

While this court is not unaware that as a general proposition "the very definite trend, particularly of the very recent cases, has been one of exceeding liberality in the interpretation and application of" the phrase "doing business" (Wanamaker v. Lewis, D.C.D.Md.1957, 153 F.Supp. 195, 200), the specific holding of the Carter decision that infrequent, sporadic calls by a tramp steamer do not constitute doing business finds support in subsequent cases in other jurisdictions (L. H. Hamel Leather Company v. Steamship City of Auckland, D.C.D. Mass.1948, 1957 A.M.C. 89—four vessels of respondent made calls to same port, in two and a half years; Novitski v. Lykes Steamship Company, D.C.E.D.Pa. 1950, 90 F.Supp. 971—five vessels made calls in three years; Higgins v. California Tanker Company, D.C.E.D.Pa. 1957, 166 F.Supp. 569—one vessel of respondent called in 1955 and a second vessel in 1956 and a third vessel of respondent called twice in 1957; Wade v. Rómano, D.C.E.D.Pa.1959, 179 F.Supp. 72 —three visits by same vessel in five years; see also: Rutter v. Louis Dreyfus Corporation, D.C.E.D.Pa.1960, 181 F. Supp. 531—five calls within five years prior to suit). By contrast, the frequency of visits in those cases upholding the service of process on the ground that the foreign corporation was doing business within the jurisdiction of the courts, was such as to evidence the existence of a

regular or habitual port of call. (Jenkins v. Lykes Bros. S.S. Co., D.C.E.D. Pa.1943, 48 F.Supp. 848—35 vessels of defendant called at same port during two year period; Holland v. Parry Nav. Co., D.C.E.D.Pa.1947, 7 F.R.D. 471—20 ships of defendant visited port during two and one half years). In the instant case in the six years preceding the accident the Steamship Yiosonas made no calls whatsoever to the Port of Baltimore or elsewhere within the State of Maryland. She has made but one call to the port since the accident. Going back for many years, the answers to interrogatories propounded by libellant reveal that the vessel, even prior to the time she was named the Steamship Yiosonas, had made only isolated calls to the Port of Baltimore. In the ten years preceding the filing of interrogatories, the vessel called at the Port of Baltimore twice in 1953; not at all in 1954; and twice in 1955. Where the libellant is proceeding, as he must of necessity here since he is not a resident of Maryland, under a statute which asserts a broad, general personal jurisdiction over a foreign corporation, which jurisdiction is expressly based on the doing of business as a contact sufficient to support it, the court concludes that corporate respondent's activities within the State of Maryland were not substantial enough to subject it to such a relatively unlimited assertion of jurisdiction.

This conclusion makes it unnecessary to consider the second question presented by the respondent, that is whether sections 97 and 98 of Article 23, the Annotated Code of the Public General Laws of Maryland, 1957 Edition are constitutional. Chief Judge Thomsen of this court in Speir v. Robert C. Herd & Company, D.C.D.Md.1960, 189 F.Supp. 432, in considering an identical attack on the constitutionality of these sections held them to contain provisions adequate to insure that notice be given to foreign corporations and therefore not to be in violation of the due process clause of the Fourteenth Amendment to the Constitution. It is appropriate to state that this judge is in complete accord with Judge Thomsen's reasoning and conclusion under the facts in that case.

Accordingly, the motion to quash service of process is hereby granted. The motion to dismiss the libel is denied, jurisdiction being retained to permit a transfer of the cause of action should it appear that corporate respondent is amenable to suit in another district and to permit libellant to attach the Steamship Yiosonas should she be found within this district.