**Charilaos GKIAFIS**

v.

**STEAMSHIP YIOSONAS, Her Engines, Boilers, Boats, Tackle, Apparel and Furniture, and Cia. Nav. Coronado, S.A., Panama, Owners and/or Bareboat Charterers.**

**No. 4339.**

United States District Court
D. Maryland.

June 2, 1966.

Motion to Reconsider Denied July 5, 1966.

John J. O'Connor, Jr., and John Wheeler Glenn, O'Connor & Preston, Baltimore, Md., Augustus Anninos, Howell, Anni-

nos & Daugherty, Norfolk, Va., of counsel, for libellant.

Randall C. Coleman and Thomas W. Jamison, III, Ober, Williams & Grimes, Baltimore, Md., Charles F. Tucker, Vandeventer, Black, Meredith & Martin, Norfolk, Va., of counsel, for respondents.

WATKINS, District Judge.

In Gkiafis v. Steamship Yiosonas, D.Md.1963, 221 F.Supp. 253, the undersigned granted respondent shipowner's[1] motion to quash service of process, but denied its motion to dismiss the libel. On appeal it was held that this court had "jurisdiction" and that respondent was amenable to service of process. Gkiafis v. Steamship Yiosonas, 4 Cir. 1965, 342 F.2d 546.

Upon remand, respondent filed a motion to decline jurisdiction and to dismiss the libel. A few hours before the time fixed for a hearing on the motion, an amended libel was filed, alleging the following counts or causes of action for:

1. Unseaworthiness, under the general maritime law;

2. Negligence, under the Jones Act;

3. Maintenance and cure, under the general maritime law;

4. Statutory penalties for failure to pay wages without sufficient cause (46 U.S.C.A. section 596);

5. Statutory damages for illegal advances in violation of the laws of the United States (46 U.S.C.A. section 599);

6. Aggravation of damages through failure to provide adequate medical care, hospitalization and cure, under general maritime law.

 Jurisdiction under number 4 is statutory and mandatory. (The Fletero v. Arias, 4 Cir. 1953, 206 F.2d 267, cert. den. 1953, 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398; Giatilis v. The Darnie, D.Md.

1959, 171 F.Supp. 751, 753). No cause of action for United States statutory penalties is stated, or can be stated, under number 5 as counsel for libellant has advised the court that the alleged advances were made outside the territorial waters of the United States. Accordingly, the statute does not apply. (Heros v. Cocknos, 4 Cir. 1949, 177 F.2d 570; Santorinakis v. The S. S. Orpheus, D.Va. 1959, 176 F.Supp. 343, affirmed 4 Cir. 1960, 279 F.2d 469). Maintenance of jurisdiction under numbers 1, 3 and 6 is discretionary. As to number 2—Jones Act jurisdiction—libellant's brief treats this as also a matter of discretion. Regardless of how the problem is stated, its solution is dependent upon the application of the principles set forth in Lauritzen v. Larsen, 1953, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 and Southern Cross Steamship Co. v. Firipis, 4 Cir. 1960, 285 F.2d 651, 653, 84 A.L.R.2d 895, cert. den. 1961, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859. These principles will be considered separately, in connection with the applicable facts,[2] and then further facts bearing upon strictly discretionary considerations will be stated.

The factors set forth by Lauritzen (345 U.S. at pages 583–591, 73 S.Ct. at pages 928–932) are:

1. "Place of the Wrongful Act"—Port of Baltimore, Maryland, but "The test of location of the wrongful act or omission, however sufficient for torts ashore, is of limited application to shipboard torts, because of the varieties of legal authority over waters she may navigate . * * * *" (345 U.S. at page 583, 73 S.Ct. at page 929).

"* * * But the territorial standard is so unfitted to an enterprise conducted under many territorial rules and under none that it usually is modified by the more constant law of the flag." (345 U.S. at page 584, 73 S.Ct. at page 929).

---

1. Service of process against the respondent vessel herself has never been effected. Accordingly, she has not been and is not now a party to any of the proceedings.

2. The motion to dismiss was heard on the amended libel, the deposition of libellant, and an affidavit of stock ownership in respondent.

2. "Law of the Flag."—Greece.

"Perhaps the most venerable and universal rule of maritime law relevant to our problem is that which gives cardinal importance to the law of the flag. * * *" (345 U.S. at page 584, 73 S.Ct. at page 929).

" * * * the weight given to the ensign overbears most other connecting events in determining applicable law." (345 U.S. at page 585, 73 S.Ct. at page 930; Southern Cross Steamship Co. v. Firipis, supra, 285 F.2d at 653).

3. "Allegiance or Domicile of the Injured." Libellant was a citizen and resident of Greece at the time of his injuries.

4. "Allegiance of the Defendant Shipowner." The owner of the ship was and is a Panamanian corporation. However, the directors, officers and owners of all the stock of this corporation were at the time of libellant's injuries, and now are, citizens and residents of Greece, and none of the stock and none of the ownership of the corporation was or is in the hands of American citizens. The flag in this case is clearly bona fide, and not one of convenience merely as in the case of nominal foreign registration by American shipowners in an attempt to avoid the obligations the laws of the United States would place upon them. (285 F.2d at page 653; 345 U.S. at page 587, 73 S.Ct. 921).

5. "Place of Contract." Libellant signed articles in Greece, specifying that employment was to be governed by the laws of Greece; and libellant joined the vessel in Greece.

"The place of contracting in this instance, as is usual to such contracts, was fortuitous. A seaman takes his employment, like his fun, where he finds it; a ship takes on crew in any port where it needs them. The practical effect of making the *lex loci contractus* govern all tort claims during the service would be to subject a ship to a multitude of systems of law; to put some of the crew in a more advantageous position than others, and not unlikely in the long run to diminish hirings in ports of countries that take best care of their seamen.

"But if contract law is nonetheless to be considered, we face the fact that this contract was explicit that the Danish law and the contract with the Danish union were to control. Except as forbidden by some public policy, the tendency of the law is to apply in contract matters the law which the parties intended to apply. We are aware of no public policy that would prevent the parties to this contract, which contemplates performance in a multitude of territorial jurisdictions and on the high seas, from so settling upon the law of the flag-state as their governing code. This arrangement is so natural and compatible with the policy of the law that even in the absence of an express provision it would probably have been implied. * * *" (345 U.S. 588–589, 73 S.Ct. 931).

6. "Inaccessibility of Foreign Forum."

"It is argued, and particularly stressed by an *amicus* brief, that justice requires adjudication under American law to save seamen expense and loss of time in returning to a foreign forum. This might be a persuasive argument for exercising a discretionary jurisdiction to adjudge a controversy; but it is not persuasive as to the law by which it shall be judged." (345 U.S. 589–590, 73 S.Ct. 932).[3]

3. Libellant claims that the last quoted clause shows that there was no issue as to whether the District Court had discretionary jurisdiction. The case certainly involved an element of discretion in determining whether or not the Jones Act is applicable. (See Mpampouros v. Steamship Auromar, D.Md.1962, 203 F. Supp. 944, 949). Furthermore, in Laur-itzen the non-applicability of the Jones Act would, under Danish law, result in claims for permanent or partial disability being directed to that state's Directorate of Insurance Against the Consequences of Accidents, either "directly or through any Danish Consulate." (345 U.S. at page 576, 73 S.Ct. at page 925).

In any event, respondent has agreed to accept service of a suit in Greece and will not contest the jurisdiction of the Greek courts.

7. "The Law of the Forum."—Jones Act.

■ Factor 1 is "usually is modified by the more constant law of the flag" (345 U.S. at page 584, 73 S.Ct. at page 929); and "very little weight is to be given the last three" (285 F.2d at page 653). Here the law of the flag, to which the Supreme Court attached the greatest importance, as well as the allegiance and domicile of the injured libellant and the allegiance of the respondent shipowner, to which that Court gave the next weight, all lead clearly to the ruling, which this court makes, that the Jones Act is not applicable under the facts in this case.

■ Having decided that the Jones Act is inapplicable, it becomes necessary to consider whether the court should retain, in its discretion, jurisdiction over counts 1, 3 and 6. While it may not necessarily follow that because there were insufficient American contacts to render the Jones Act applicable, there are therefore insufficient American contacts to retain discretionary jurisdiction over claims under the general maritime law, the factors leading to the first conclusion strongly favor the latter conclusion also.

■ In addition to the Greek flag and allegiance factors mentioned above, it appears that all the members of the crew at the time of libellant's accident were Greek nationals, except for one able-bodied seaman, who was a Honduran; there has been a complete change of officers and crew since the accident, the vessel being now manned completely by Greek nationals. The witnesses therefore on the issues of unseaworthiness, negligence, and alleged failure to supply continuing medical attention resulting in aggravation of the original injury are Greeks, presumably living in Greece, speaking Greek, and amenable to process issuing out of Greek courts but not this court. The sole contact with the United States is the occurrence of the alleged initial injury in the port of Baltimore, and treatment at the United States Public Health Service Hospital in that City for nine days.[4] The medical records associated with this treatment can readily be obtained and translated into Greek. These facts all overwhelmingly point to the desirability of a decision in the Greek courts of counts 1, 3 and 6.

Nor does the mandatory jurisdiction over count four lead to a different conclusion. This claim is relatively minor from a financial standpoint, and respondent is willing to have it also submitted to the Greek courts.

See Mpampouros, supra, 203 F.Supp. 944, 949–950; The Darnie, supra, 171 F.Supp. 751, 754; see also Romero v. International Terminal Operating Co., 1958, 358 U.S. 354, 384, 79 S.Ct. 468, 3 L.Ed.2d 368; Moutzouris v. National

---

4. The libellant in urging this court to retain jurisdiction has relied heavily on the "fact" that his alleged injury occurred in the Port of Baltimore, as indeed he must rely since this is the *sole* American contact of any possible substance which he can assert. But such reliance is misplaced. Libellant claims to have been injured because of a defective door on the vessel of which he was a crew member and because of negligence of his fellow seamen with respect thereto. This is not a case involving a collision in the channels approaching the port. This is not a case in which a seaman sustained an injury on land while the vessel was in port or even a case where loading or unloading operations conducted by shore based personnel in some way triggered or were causally connected with his injury. Libellant's alleged injury occurred aboard a vessel which merely by chance happened to be in the Port of Baltimore at that time. There is absolutely no relationship or connection, causal or otherwise, between libellant's alleged injury and the location of the vessel upon which he was injured.

Moreover, if the case were heard in this District, libellant would have to return from wherever he is. As far as the record shows, Greece would be at least as convenient as, and probably more convenient to him for trial than, this District.

Shipping & Trading Co., S.D.N.Y.1961, 196 F.Supp. 482, 483–484.

Upon consideration of all the relevant factors, it is concluded that this court should retain jurisdiction only of the fourth cause of action, upon condition that if libellant files suit in Greece on any of said causes of action, including the fourth count, respondent will accept service and not contest the jurisdiction of the Greek courts (nor raise any question of limitations). Prior to the entry of an order of dismissal, a stipulation or undertaking to this effect must be filed in these proceedings.

Counsel may submit an appropriate order.